## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| AUTAUGA QUALITY COTTON ASSOCIATION, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-879-MHT-PWG |
| | ) | |
| TIM L. CROSBY, *et al,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

In August 2014, Plaintiff Autauga Quality Cotton Association filed this action alleging two counts of breach of contract for failure to deliver the cotton crop from certain pledged acres on Defendants' farms for the 2010 crop year.  (Doc. 2).  In response, Defendants filed under Fed. R. Civ. P. 12(b)(3) and 12(b)(6) a motion to dismiss or to transfer venue, alleging that the Plaintiff, as a Mutual Farming Association formed under Alabama Code section 2-10-90 *et seq.*, is unable to bring this action, and that venue in the Middle District of Alabama is improper or, in the alternative, that the doctrine of *forum non conveniens* warrants transfer to the Middle District of Georgia.  (Doc. 13).  On November 25, 2014, Judge Myron H. Thompson referred the matter to the Magistrate Judge for consideration and recommendation.

1

(Doc. 17)  *See also* 28 U.S.C. § 636(b); Rule 72, F.R.Civ.P.; *United States v. Raddatz,* 447 U.S. 667, 100 (1980); *Jefferey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## I.    JURISDICTION

This court has jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a).   In the complaint, Plaintiff alleged that it is an Alabama incorporated mutual farming and trucking association with Autauga County, Alabama as the principle place of business.  (Doc. 2 at ¶ 1).  Plaintiff also alleged that all Defendants were residents of Georgia.  (*Id.* at ¶¶ 2-5).  The parties have agreed that the damages sought exceed the jurisdictional threshold.  (*Id.* at ¶¶ 7, 25, 28). Jurisdiction in this court is proper.  The requisite elements for diversity jurisdiction are present.

## II.    STANDARD OF REVIEW

### <u>RULE 12(b)(6) MOTION TO DISMISS</u>

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual

allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir.2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

## VENUE

The federal venue statute, 28 U.S.C. § 1391(a), applicable in this diversity action, provides that venue is proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same state;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*Id.*

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss a complaint for "improper venue," and 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) and section 1406(a) authorize dismissal, therefore, when venue is "improper" or "wrong" in the district in which the plaintiff commenced this action. Additionally, section 1406(a) permits a transfer to an appropriate forum "in the interest of justice," even if personal jurisdiction over the defendant is lacking. *See Goldlawr, Inc. v. Heiman*,

369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").

When reviewing a challenge to venue, the court accepts the allegations of the complaint "as true, to the extent they are uncontroverted by defendants' affidavits." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). Additionally, the plaintiff bears the burden of demonstrating that venue is proper. *Id.*

## *FORUM NON CONVENIENS*

"A district court may transfer a case for the convenience of the parties and witnesses, and in the interest of justice." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting 28 U.S.C. § 1404(a)) (internal marks omitted). "The doctrine of *forum non conveniens* 'authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum.'" *Ford v. Brown*, 319 F.3d 1302, 1306-07 (11th Cir. 2003) (quoting *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1218 (11th Cir. 1985)). A district court has "wide discretion" to determine whether to transfer venue under the doctrine of *forum non conveniens*. *Weber v. Coney*, 642 F.2d 91, 93 (5th

5

Cir. Unit A Mar. 1981).[1]

> The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.145[5] (1988). Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.

*In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

The moving party must first demonstrate that the action could have originally been brought in the transferee forum. *See, e.g.*, *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967) ("Section 1404 operates where there are two (or more) forums where a suit could be brought and where it could proceed . . . ."). Once the movant has satisfied a court that the transferee forum is a proper one, the court must then balance a number of factors to determine whether transfer is appropriate. In making its determination, the court should consider, among other equitable factors, (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "[T]he court abuses its discretion when it fails to balance the relevant factors." *Ford*, 319 F.3d at 1308 (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983)) (bracketed text in original).

## III.   FACTUAL BACKGROUND

The parties entered into a contract for the sale and marketing of Defendants' cotton, which was executed by Defendants Tim L. Crosby and Marisa D. Crosby on April 12, 2007, and by Defendants Brandon Crosby and Skyler Crosby on September 20, 2008.[2]   (Doc. 2-1). In the contract, the Defendants agreed to deliver their cotton "to an approved cotton gin (to be designated by the [Plaintiff]) for ginning, bailing and delivery to an approved warehouse...." (*Id.*) After the cotton is ginned, bailed, and delivered to an approved warehouse, title is to be passed from Defendants to Plaintiff. (*Id.*) Additionally, "[a]ll warehouse receipts and other evidences of ownership with respect to such cotton shall be delivered promptly to the [Plaintiff]...."

---

[2] There is some disagreement over whether Defendants Brandon Crosby and Skyler Crosby executed the contract in Autauga County, Alabama, or some other, unspecified location. (Doc. 13 at p. 2, Doc. 13-3 at ¶¶ 4-5, Doc. 13-4 at ¶¶ 4-5). However, it is uncontested that Defendants Tim Crosby and Marisa Crosby executed the agreement in Brooks County, Georgia and that the Plaintiff executed the agreement in Autauga County, Alabama. (Doc. 2).

(*Id.*)  The Plaintiff, in turn, collects Defendants' and other Association members' cotton into "pools" for marketing.[3]  (*Id.*)  After pooling the cotton, Plaintiff sells the physical cotton or cotton futures throughout the U.S. and internationally.  (Doc. 14 at p. 7).  The contract also sets out that "[a]ll notices, written communications, warehouse receipts, checks and other documents" are to be furnished to the Plaintiff in Prattville, Alabama, and to the Defendants in Georgia.  (Doc. 2-1).  The designated gin for delivery of Defendants' cotton was B.C.T. Gin Co., Inc.  (Docs. 2-2, 2-3).  The designated warehouse was also B.C.T. Gin Co., Inc.  (*Id.*)  B.C.T. Gin Co. is located in Colquitt County, Georgia.  (Doc. 13 at p. 2).

## IV.   DISCUSSION

The current motion and responsive papers raise two issues.  First, it must be decided whether Plaintiff, as a Mutual Farming Association formed under Alabama Code section 2-10-90 *et seq.*, can bring suit at all.  If Plaintiff is able to bring suit, the next issue to be addressed is venue.  Defendants raise two questions in relation to this issue:  whether venue in the Middle District of Alabama is proper at all and, if it is, whether the doctrine of *forum non conveniens* warrants transfer to the Middle District of Georgia.

---

[3] For the purposes of these "pools," the cotton is not physically combined.  Instead, it stays at the warehouses designated by the Plaintiff and the "pooling" is for the purposes of Plaintiff's marketing and sales efforts.  (Doc. 14 at p. 9).

## RIGHT TO SUE

Defendants challenge, under Federal Rule of Civil Procedure 12(b)(6), whether Plaintiff has the right to bring this action at all as a Mutual Farming Association organized under Alabama Code section 2-10-90 *et seq.* (Doc. 13 at pp. 11-14). Section 2-10-104 describes what types of suits a Mutual Farming Association may be part of:

> An association incorporated under this article may institute and defend civil actions and may collect, institute civil actions for and realize on claims for the purchase money of products sold by it for its members or nonmembers, and on claims for freight overcharges on and for loss and damage to shipments made by it for its members or nonmembers for the use and benefit of such persons.

Ala. Code § 2-10-104. Defendants argue that, despite the apparent authorization to "institute and defend civil actions," Plaintiff may bring only two types of actions: "a suit for the purchase money of products sold by the association for its members or nonmembers, and a suit for freight overcharges on and for loss and damage to shipments made by the association for its members or nonmembers." (Doc. 13 at p. 11). The court disagrees.

While there is no case law that directly addresses whether a Mutual Farming Association may bring a suit for breach of contract, a reading of the statute itself is relatively straightforward and requires none of the rules of statutory construction put

9

forward by Defendants.  It is true that the statute lists two specific instances of suits permitted, but it only does so after authorizing that associations "may institute and defend civil actions."  It is also of note that the two instances specifically enumerated relate to actions brought for purchases or shipments made "by it for its members or nonmembers."  Ala. Code § 2-10-104.  In other words, these two instances are suits that could have been brought by the members themselves; the statute curtails arguments that the association is not the real party in interest.  They do not take away the right of the associations to institute and defend civil actions on their own behalf.

To hold that the Legislature specifically authorized an association to "institute and defend civil actions" while at the same time denying that authority would render the statute structurally illogical.  "When the statutes's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms."  *Dodd v. United States*, 545 U.S. 353, 359 (2005) (quoting *Hartford Underwriters Ins. Co. V. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (alterations and internal quotation marks omitted)).  The express language of the statute at issue here is plain and clearly authorizes this suit.

Both *Flav-O-Rich v. City of Birmingham*, 476 So. 2d 46 (1985) and *Tucker v. Jefferson County Truck Growers' Association*, 487 So. 2d 240 (1986) lend inferential support to this conclusion.  In both cases, the defendant was an association under

Alabama Code section 2-10-90 *et seq.*  476 So. 2d at 48, 48 n.2; 487 So. 2d at 241-42.

Neither case brought a claim that falls within one of Defendants' two enumerated

instances where suits are permitted under section 2-10-104.  487 So. 2d 46; 487 So.

2d 240.  However, the Alabama Supreme Court heard both cases without any regard

for the limitations Defendants' now ask to be read into the statute.  *Id.*  Although

these two cases are examples only of associations "defend[ing] civil actions" other

than the two listed, there is no reason to suppose that the result would be any different

if they had "institute[d]... civil actions" since both instituting and defending are

explicitly allowed by the statute.

Defendants also make an argument comparing section 2-10-104 to section 2-

10-54.  (Doc. 13 at p. 12).  They argue that because section 2-10-54(15) authorizes

associations under Article 3 of Chapter 10 "[t]o sue and be sued" while section 2-10-

104 authorizes associations under Article 4 to "institute and defend civil actions,"

section 2-10-104 does not authorize the Article 4 associations to sue and be sued.

(*Id.*) However, Defendants' argument ignores the fact that the two sections are found

in different articles drafted over ten years apart.  *Flav-O-Rich*, 476 So. 2d at 49.  The

use of a synonymous phrase alone does not indicate that the Alabama legislature

sought to reserve from Article 4 entities (the Article now at issue) the right to

participate in civil actions, particularly when they specifically enumerated that right,

11

albeit using different words.  The Defendants have not offered legislative history in support of the contention and the court has located none.  In fact, Articles 3 and 4 were intended as "separate and distinct schemes" while Articles 1 and 2 were intended to apply to all entities in the chapter, lending further support to a reading of this statute that would allow for the instant suit.  *Id.*

## VENUE

### A.    Proper Venue

Defendants contend that the Middle District of Alabama is an improper venue for this case.  (Doc. 13 at pp. 6-11).  Under 28 U.S.C. § 1391(b):

> A civil action may be brought in -
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendants are all located in Georgia, making that district proper under subsection (1).  Thus, subsection (2) is the applicable section for determining whether venue in the Middle District of Alabama is also proper.  If venue in this district is not proper, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case

to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Plaintiff's claims arise out of an alleged breach of a contract. In its complaint, Plaintiff contends that a claim for breach of contract lies in Defendants' "failure to deliver... 2,133.6 acres worth of cotton" and "fail[ure] to deliver... 76.5 acres worth of cotton." (Doc. 2 at ¶¶ 23, 28). Thus, it is the "failure to deliver" the cotton that forms the basis of Plaintiff's breach of contract claim. The contract itself provides that the cotton is to be delivered to "an approved cotton gin (to be designated by the [Plaintiff])..." and then delivered to "an approved warehouse (to be designated by the [Plainitiff])..." after ginning. (Doc. 2-1 at p. 3). In Defendants' case, both the gin and warehouse to be used was B.C.T. Gin Co., Inc, located in Georgia. (Doc. 2-2, 2-3, 13 at p 7). Plaintiff does not dispute this fact. Based on a thorough review of the record, it is clear that the events and omissions actually giving rise to the claim for breach of contract occurred in Georgia with the non-delivery of the cotton to B.C.T. Gin Co., Inc. as required by the contract.

Plaintiff contends, however, that a significant number of events and omissions also occurred in Alabama. In making this assertion, Plaintiff first points to its own duties under the contract, all of which would have occurred in Autauga County, Alabama. (Doc. 14 at p. 7). However, it is immaterial whether Plaintiff would haved fulfilled its duties in Alabama because Plaintiff's actions did not give rise to the

claim. Furthermore, under the contract, Plaintiff's duties are not triggered until after Defendants deliver the cotton to the gin. (Doc. 2-1). Plaintiff also asserts that it would "receive[] title to the cotton in Autauga County," but transfer of title is likewise not triggered until after the cotton is delivered to the gin and the warehouse. (*Id.* at p. 3). While it may be true the Defendants did not transfer title,[4] it is the failure to deliver the cotton to the gin, not the failure to deliver title, that gave rise to this claim and were alleged in the complaint as forming the basis of the claim. All other failures happening sequentially after this nonoccurrence might well have given rise to a claim in their own right under an alternative set of facts, but under this set of facts, they did not because the claim had already arisen by that point. Similarly, Plaintiff's contention that the "loss is felt" in Alabama (Doc. 14 at p. 9) is really a question of damages and is not information to the question of whether and where Defendants breached the contract.

Plaintiff also points out that the contract was drafted in Alabama (*id.* at p. 8) and that the farm verification forms were sent from the Defendants, presumably in Georgia, *to* Alabama (*id.*). Neither of these facts has any bearing on the issue at hand. Neither party has contested the validity of the contract. The sending of the forms was a criteria of the contract, but it was not part of the alleged breach and, therefore, does

---

[4] It is unnecessary to reach this question because the issues raised are dispositive of the case.

not aid in an analysis of the "events or omissions giving rise to the claim" as required by section 1391.

Next, Plaintiff points to the fact that it "does its banking in Autauga County" as well as other facts amounting to doing business in Autauga County. (Doc. 14 at p. 8). The fact is irrelevant to the question of venue. The venue analysis is unaffected by the place in which the plaintiff does business. Plaintiff's arguments that at least some of the Defendants have been to Autauga County is equally unavailing to a determination of whether venue is proper. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1336, 1372-73 (11th Cir. 2003).

Plaintiff points to *Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc.*, 956 F. Supp. 2d 1323 (M.D. Ala. 2012), as instructive to the venue question in this case. (Doc. 14 at pp. 10-11). In *Goodwyn*, the parties were diverse and were working together to establish a "mitigation bank"[5] in Mississippi for the defendants. *Id.* at 1325-26. When relations between the parties soured, the plaintiff sued for payment for services rendered. *Id.* at 1326. In reaching its conclusion that the Middle District of Alabama was a proper venue, the court first pointed out that there were multiple

---

[5] A mitigation bank is a business that creates wetlands. Its funds derive from those required by law to establish new wetlands as compensation for having adversely affected existing wetlands. In lieu of establishing the wetlands themselves, some entities will contribute to a mitigation bank instead. *Goodwyn Mills*, 956 F. Supp. 2d at 1325.

venues which might be proper.  *Id.*  The court then relied on the fact that the contract was drafted and signed in the Middle District of Alabama and some of the services that had not been paid for were performed in Alabama.  *Id.*  This is distinct from the instant case.  While Plaintiff asserts that it *would have* undertaken its duties in Alabama, those duties were not triggered until the cotton was delivered in Georgia. Additionally, the *Goodwyn* plaintiff was suing for failure to pay for services provided in Alabama.  In other words, the claim arose from the provision of services in Alabama and the failure to pay for these services.  The instant action, on the other hand, arises from the failure to perform services in Georgia.  There is no causal nexus to Alabama.  Additionally, the contract was only executed in Alabama in *Goodwyn Mills*.  *Id.*  In contrast, Defendants here completed execution of the contract in Georgia, at which point Plaintiff's offer was accepted and there was a valid contract.

*Jenkins Brick Co. v. Bremer* is more apposite to the facts of this case.  321 F.3d 1366 (11th Cir. 2003).  In *Jenkins*, the Eleventh Circuit rejected the same minimum contacts type of inquiry in the venue context that Plaintiff now puts forward.  *Id.* Instead, the court found that the facts to focus on are solely those "events that directly give rise to a claim."  *Id.* at 1371.  Particularly, the Court emphasized that the venue statute is "meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."  *Id.* at 1371-72 (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir.

1995)).  An application of these principles supports a conclusion that venue is not proper in the Middle District of Alabama and instead solely lies in the Middle District of Georgia, as discussed above.

Having found that venue is not proper in the Middle District of Alabama, all that remains is to determine whether the interest of justice allows for transfer under 28 U.S.C. § 1406(a) or requires outright dismissal.  Although Plaintiff's claims would not be barred by the statute of limitations if Plaintiff were forced to refile in Georgia, there are other considerations that warrant transfer over dismissal.  First, issues have been litigated in this court; it would be uneconomical to open the door for their relitigation in the Middle District of Georgia.  Second, motions to dismiss are time and resource intensive for both parties and the court.  To effectively allow the case to start over is to invite a second round of Rule 12 motions, potentially with issues that have not been raised and would otherwise be deemed to have been waived at this stage of litigation.  Finally, there is considerable cost to the parties as well as the potential for delay by requiring the complaint and responsive filings to be filed anew. All factors of justice and economy point to transfer to the Middle District of Georgia.

### B.     *Forum Non Conveniens*

The question of *forum non conveniens* need not be reached because there is only one proper venue in the case at bar.  *Ford*, 319 F.3d at 1306-07 ("The doctrine

17

of *forum non conveniens* 'authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue....'"").  Nevertheless, it is illustrative to point out that, had the Middle District of Alabama been a proper venue, this doctrine would still necessitate a transfer to the Middle District of Georgia.  As the Defendants point out, almost all of the actions leading up to this claim occurred in that district.  Those that did not consist mostly of paperwork, which can easily be taken to the district by the parties.  On the other hand, any questions about the gin or the cotton yield itself can much more conveniently be addressed in the district in which both are located.

Of particular concern is the fact that most, if not all, third party witnesses are located in the Middle District of Georgia.  This factor has been deemed one of the most important in the *forum non conveniens* analysis.  *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp. 2d 634, 637-38 (S.D. Ala. 2007) (quoting *Insuracorp, Inc. v. Am. Fidelity Assur. Co.*, 914 F.Supp. 504, 506 (M.D. Ala. 1995)).  Plaintiff contends that the witnesses listed by Defendants are unnecessary and also that they would likely come to the Middle District of Alabama voluntarily, based on their cooperation in submitting affidavits.  (Doc. 14 at pp. 13-14).  However, it is not for the Plaintiff to decide which witnesses Defendants use to mount their defense.  Nor is it within Plaintiff's or this court's abilities to predict whether Defendants' witnesses will be cooperative in the future.  In any case, the Middle District of Georgia is certainly the

more convenient forum for all noted witnesses and the forum best situated for compelling attendance of any reticent witnesses.  Additionally, as discussed more fully in the previous section, the locus of operative facts is clearly the Middle District of Georgia.

On the other hand, Plaintiff's choice of forum is the Middle District of Alabama and Plaintiff asserts that is has necessary documents for trial located here. (*Id.* at p. 14).  However, these factors alone cannot overcome all others.  The transportation of documents, especially given Plaintiff's greater means relative to Defendants', can be no great task.  If Plaintiff's choice of forum were intended to be the deciding factor in the *forum non conveniens* argument, there would be no need to consider other factors, or even to maintain the doctrine, as the venue in which a claim is brought would inevitably be the ultimate trial forum based on the single overriding factor of Plaintiff preference.

Finally, Plaintiff points out that the contract is governed by Alabama law.  (*Id.* at p. 15).  This argument misconstrues the purpose of choice of law provisions.  If anything, it is noteworthy that the parties could as easily have included a venue selection clause when negotiating the contract but chose not to do so.  The court will not go so far as to read a choice of venue into a choice of law provision.  To the extent that Plaintiff suggests that the Middle District of Georgia would not be as

equipped to determine questions of Alabama contract law, the court disagrees. Alabama is far from a minority jurisdiction in that area of law and, in fact, breach of contract law is virtually identical in both states. *Compare* Ala. Code § 6-5-280 *et seq.* *with* Ga. Code § 13-1-1 *et seq.*

## V.    CONCLUSION

Accordingly, for the reasons stated, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's motion to dismiss for improper venue and for failure to state a claim and alternative motion to transfer (Doc. 13) is due to be **GRANTED IN PART** and **DENIED IN PART** as follows:

Defendants' motion to dismiss for failure to state a claim is due to be **DENIED**.

Defendants' motion to dismiss for improper venue is due to be **GRANTED IN PART**.  The case is due to be transferred under 28 U.S.C. § 1404(a) to the Middle District of Georgia in the interest of justice and for the convenience of the parties and witnesses.

In the alternative, Defendants' motion to transfer venue under the doctrine of *forum non conveniens* is de to be **GRANTED**.

Finally, it is **ORDERED** that the parties shall file any objections to this recommendation on or before **February 24, 2015**.  Any objections filed must

specifically identify the findings in the Magistrate Judge's recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).

**DONE** and **ORDERED** this 10th day of February, 2015.

/s/ Paul W. Greene
United States Magistrate Judge

21